**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**In re: JOHN M. WILSON, a/k/a MICHAEL WILSON and CHRISTINE A. WILSON, f/k/a CHRISTINE A. PETERSON,**
        Debtors.

**MOHNS, INC.,**
        Plaintiff-Appellant,

    v.
                              Case No. 13-C-0710
                              Adversary Case No. 12-02935
                              Bankr. Case No. 11-21802

**THE JENNIE C. BOURKE TRUST**
**c/o JOHN M. WILSON, TRUSTEE**
        Defendant-Appellee.

---

## DECISION AND ORDER

This is an appeal from two orders of the bankruptcy court in an adversary proceeding. The adversary complaint was filed by Mohns, Inc., one of the debtors' unsecured creditors, against the Jennie C. Bourke Trust (the "Trust" or "Bourke Trust"), another creditor. Mohns sought to have the Trust's claim, which is unsecured, either disallowed, reduced or subordinated to its own claim. The Trust filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted and for summary judgment. The bankruptcy court granted this motion in an order dated March 27, 2013. Mohns then asked the bankruptcy court to make additional findings, which it did in an order dated May 13, 2013. Mohns appeals both the order granting the motion and the order making additional findings.

An initial question is whether the bankruptcy court, in granting the Trust's motion and making additional findings, dismissed the complaint for failure to state a claim upon

which relief can be granted or entered summary judgment in the Trust's favor. The bankruptcy judge, Judge Susan Kelley, noted in her written opinion on the Trust's motion that the Trust had moved both to dismiss the complaint and for entry of summary judgment, see Mem. Dec. at 2, but she did not expressly state whether she was treating the motion as one to dismiss or as one for summary judgment. At the end of her written opinion and in her separate order granting the motion, the judge stated that the Trust's "motion to dismiss" was granted. But the judge did not mention the standards that apply to Rule 12(b)(6) motions in her analysis or otherwise identify any pleading deficiency in the adversary complaint. Instead, she seems to have considered matters outside the complaint and thus to have treated the motion as one for summary judgment. In their appellate briefs, the parties seem to treat the court's order as one granting a motion for summary judgment. See Opening Br. at 2; Appellee Br. at iii. Given the parties' apparent agreement on this issue, I too will treat the order as one granting a motion for summary judgment. I will treat the judge's order making additional findings as an order elaborating on her reasons for granting summary judgment to the Trust.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding is part of a Chapter 7 case filed by John and Christine Wilson. Mohns is the Wilsons' largest unsecured creditor and has a claim in the amount of $144,365.78. The Bourke Trust is a trust that John Wilson's parents established for the benefit of his sister, Jennie. John is the trustee. Over the years, John borrowed money from the Trust. In April 2006, John, acting both in his own behalf and in his capacity as trustee, signed a document entitled "Assignment of Life Insurance Policy as Collateral."

2

Case 2:13-cv-00710-LA   Filed 10/08/13   Page 2 of 14   Document 6

This document purports to assign John's interest in two life insurance policies to the Trust as collateral for his loans. Together, the two policies have a cash surrender value of $145,330.66.

When he was on the brink of bankruptcy, John met with a bankruptcy attorney and informed him that he had assigned the life insurance policies to the Trust as collateral for his loans. The attorney reviewed the transaction and told John that it was his opinion that the assignment was not "valid." The fact that caused him to form this opinion was John's having failed to notify the insurance company that he had assigned the policies to the Trust.[1] The attorney informed John that if he declared bankruptcy without taking action to make the assignment valid, then the Trust would not have a perfected security interest in the policies. But he also informed John that if he did take action to make the assignment valid and declared bankruptcy within twelve months of doing so, then the trustee in bankruptcy would likely be able to avoid the assignment as a preferential transfer. Since it appeared that John would need to declare bankruptcy soon, the attorney advised John against validating the assignment. He recommended that, instead, John should talk to his sister and see if she would agree to release the Trust's interest in the policies.[2] John followed this recommendation, and his sister agreed to allow him to release whatever

---

[1] Nothing in the record indicates why John's failure to notify the insurance company might have rendered the assignment invalid.

[2] The parties have not explained why the attorney thought that John's sister, the beneficiary of the Trust, had to grant John permission to release the Trust's interest in the policies. Usually it is the trustee, not the beneficiary, that holds legal title to the assets of a trust. Thus, John should have been able to release the Trust's interest in the policies without obtaining his sister's permission.

3

interest the Trust may have had in the policies. She signed a memorandum to this effect, and then John, as trustee, effected the release.

John (and Christine, who can be ignored for purposes of this appeal) filed for bankruptcy on February 15, 2011. On his schedules, he listed the insurance policies as his own assets and then declared them as exempt under 11 U.S.C. § 522(b)(3), which means that they are not property of the bankruptcy estate and are not available for satisfying the claims of general creditors. John listed his debt to the Bourke Trust as an unsecured debt. The Trust then filed a proof of claim in the amount of $102,800.37 and did not indicate that the claim was secured.

Mohns filed an objection to the Trust's claim and argued that the claim should be disallowed or, in the alternative, equitably subordinated, see 11 U.S.C. § 510(c), to Mohns's claim. Mohns's argument was that the Trust's decision to release its interest in the life insurance policies and become an unsecured creditor had the effect of causing Mohns to receive a smaller distribution from the bankruptcy estate. Mohns pointed out that if the Trust had not released its interest in the policies, and if that interest was valid and enforceable in the bankruptcy proceeding, then its claim would have been satisfied in full using the policies. But because the Trust did release its interest in the policies, its claim will be satisfied out of the estate assets available to satisfy the claims of unsecured creditors. This, in turn, will reduce the amount available to pay Mohns's unsecured claim. (It is undisputed that the estate will have insufficient assets to pay both the Trust and Mohns in full.) At the same time, the Trust's having released its interest in the policies will not benefit the estate and the unsecured creditors, because, as noted, John has claimed the policies as exempt. Thus, argued Mohns, the Trust's decision to become an

4

unsecured creditor resulted in the Trust's taking money out of Mohns's pocket. Mohns argued that an arm's-length creditor would not have agreed to release its interest in the policies and that the only reason the Trust did so was because it had an "insider" relationship with the debtor.

Before Mohns filed its objection to the Trust's claim, it had filed an adversary complaint against the debtors alleging that the debtors had engaged in bankruptcy fraud and therefore should be denied a discharge. In this complaint, Mohns alleged that a number of the debtors' actions constituted fraud, one of which was John's actions with respect to the life insurance policies and the claim of the Bourke Trust. The bankruptcy judge, who at that time was Judge James Shapiro rather than Judge Kelley, held Mohns's objection to the Trust's claim in abeyance pending the resolution of the claims alleged in the adversary complaint.

The claims in Mohns's prior adversary complaint were tried on March 14, 2012, and on July 31, 2012, Judge Shapiro issued a written opinion in which he explained that he would deny the relief Mohns had requested and grant the debtors a discharge. In this opinion, Judge Shapiro wrote that he found that all of the challenged actions of the debtors, which included John's actions with respect to the Trust's claim and the life insurance policies, were done "upon the advice of counsel, in good faith," and not "with any actual intent to defraud." July 31, 2012 Dec. at 7. He also wrote that "[a]lthough the termination of the collateral assignment to the trust may well reduce the amount of dividends which Mohns will receive, that was not the debtors' objective in carrying out their actions." Id. In the same part of the opinion, Judge Shapiro wrote that "[a]t the time this bankruptcy petition was filed, John was indebted to the trust in the amount of $102,800." Id. at 4.

5

Following Judge Shapiro's decision, Mohns filed a document entitled "post-hearing motions" in which it raised various issues. Judge Shapiro issued an order denying the relief Mohns requested in those motions on August 24, 2012. In this order, Judge Shapiro wrote the following:

> Mohns has asserted that the defendant, John M. Wilson, gave "conflicting accounts" of the amounts claimed as due to the Jennie C. Bourke Trust and specifically noted that the debt due to the trust was listed in the debtors' bankruptcy schedules at $132,000 but that the only promissory note executed was in the amount of $55,000.
>
> This court addressed the amount due to the trust in its decision, concluding that the amount owing from Mr. Wilson to the trust was $102,800 based on Exhibit 8 which contained an itemized breakdown of all loan transactions. Regardless, the amount due to the trust had no affect [sic] upon this court's determination that both debtors are entitled to receive a discharge.

Order at 2.

On September 10, 2012, Judge Shapiro presided over a status conference at which Mohns's pending objection to the Trust's claim was discussed. During that conference, Judge Shapiro indicated that if Mohns intended to pursue equitable subordination of the Trust's claim, then it had to file a separate adversary complaint seeking such relief. On December 12, 2012, Mohns filed such a complaint against the Trust, which touched off the present adversary proceeding. Through this complaint, Mohns sought to have the Trust's claim equitably subordinated and also to have the Trust's claim disallowed and/or reduced on the ground that the Trust had not proved the amount of John's indebtedness. By the time this complaint was filed, Judge Shapiro had retired from the bench and Judge Kelley had begun to preside over the Wilsons' bankruptcy case.

On January 14, 2013, the Trust filed the motion to dismiss and for summary judgment that is at issue in this appeal. The Trust argued that the complaint should be dismissed because Judge Shapiro had made findings in the previous adversary proceeding that controlled the outcome of the current adversary proceeding. One such finding was that John had acted in good faith and not for the purpose of harming Mohns when he caused the Trust to release its interest in the life insurance policies. Another such finding, according to the Trust, was that the amount of John's indebtedness was $102,800. The Trust argued that these findings established that the Trust had a valid claim in the amount of $102,800 and that there was no basis for equitably subordinating that claim. The Trust argued in the alternative that, to the extent Judge Shapiro had not made findings which resolved the equitable-subordination issue, Mohns could not point to anything inequitable in the Trust's conduct and therefore was not entitled to have the Trust's claim equitably subordinated.

In responding to the Trust's motion, Mohns argued that Judge Shapiro's findings in the prior adversary proceeding did not establish that the Trust's claim should not be equitably subordinated. In addition, Mohns argued that grounds for equitably subordinating the Trust's claim were present because the Trust was an "insider" of the debtor that had not behaved as an arm's-length creditor would have. Mohns also argued that the amount of the Trust's claim was in dispute and that Judge Shapiro had not settled that issue during the prior adversary proceeding.

On March 27, 2013, Judge Kelley issued a written opinion granting the Trust's motion. The court found that "the conditions for equitable subordination do not exist in this case." Mem. Dec. at 6. She found that, for two independent reasons, one of the elements

7

of equitable subordination—inequitable conduct—was not present. First, she determined that Judge Shapiro's previous findings were law of the case and established that no inequitable conduct was present in the transaction between John and the Trust. Second, she determined that, even if Judge Shapiro's findings were insufficient to resolve the issue of inequitable conduct, Mohns had failed to demonstrate that the Trust's actions rose to the level of inequitable conduct. Judge Kelley also found that another element of equitable subordination—subordination's being consistent with the provisions of the Bankruptcy Code—was not present.

In her written opinion, Judge Kelley did not address Mohns's challenge to the amount of the Trust's claim, and this caused Mohns to file a motion to make additional findings. See Fed. R. Bankr. P. 7052. In response to this motion, Judge Kelley issued an order in which she made additional findings concerning the amount of the Trust's claim. She found that, in resolving the prior adversary proceeding, Judge Shapiro had found that the amount of the Trust's claim was $102,800. She determined that she could not revisit that finding and that it was binding on Mohns. Order ¶ 11.

## II. DISCUSSION

Mohns raises two main issues on appeal: (1) whether the bankruptcy court erred in granting summary judgment to the Trust on the issue of equitable subordination; and (2) whether the court erred in granting summary judgment to the Trust on the issue of the amount of its claim. I review a bankruptcy court's grant of summary judgment de novo. See In re Midway Airlines, Inc., 383 F.3d 663, 668 (7th Cir. 2004).

## A. Equitable Subordination

The doctrine of equitable subordination, codified at 11 U.S.C. § 510(c), allows a court to move a creditor down in the order of payment out of the asserts in the bankruptcy estate as a remedy for some sort of inequitable conduct. See generally In re Lifschultz Fast Freight, 132 F.3d 339 (7th Cir. 1997); In re Mobile Steel Co., 563 F.2d 692 (5th Cir. 1977); 4 Collier on Bankruptcy ¶ 510.05 (16th ed.). It is usually invoked when the debtor is a closely held corporation and its "insiders" make claims against the estate. Lifschultz, 132 F.3d at 343–44. In the classic fact pattern, insiders attempt to convert their equity interests in the corporation into debt on the eve of the corporation's bankruptcy and collect as creditors. Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1356 (7th Cir. 1990). This is considered inequitable because equity holders are not supposed to receive distributions from the estate until all creditors have been paid. Equitable subordination allows courts to order such insiders to return to their position at the end of the line. Id.; Lifschultz, 132 F.3d at 343–44.

Equitable subordination can be applied outside this classic fact pattern, and the standard for determining whether it should be applied is usually described as containing the following three elements: (1) the creditor has engaged in some form of inequitable conduct; (2) the misconduct resulted in injury to the other creditors of the bankrupt or conferred an unfair advantage on the creditor; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. Lifschultz, 132 F.3d

9

at 344; Mobile Steel, 563 F.2d at 699–700. In the present case, the key question is whether the creditor (the Trust) has engaged in some form of inequitable conduct.[3]

Neither section 510(c) nor the cases interpreting it define "inequitable conduct." Instead, courts have recognized that certain forms of conduct by creditors are inequitable. I have already mentioned one form of inequitable conduct: an equity holder's or other insider's attempting to move up in the queue and take distributions from the estate that belong to bona fide creditors. As for other forms, courts have said that they are limited to the following "general paradigms": (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. In re U.S. Abatement Corp., 39 F.3d 556, 561 (5th Cir. 1994); 1 Robert E. Ginsberg et al., Ginsberg and Martin on Bankruptcy § 10.11[A][3] (5th ed.); 4 Collier on Bankruptcy ¶ 510.05[2].

The Trust's conduct in the present case does not fit within the classic fact pattern, does not fit within any of the three general paradigms, and does not resemble any other conduct that any court has deemed inequitable. But Mohns argues that the Trust's conduct should be deemed inequitable because (1) John Wilson controlled it and, as a result, the transaction between the Trust and the debtor involved self-dealing, and (2) the

---

[3]Judge Kelley gave two alternative reasons for ruling against Mohns on the question of inequitable conduct: (1) Judge Shapiro had already determined that the Trust had not engaged in inequitable conduct; and (2) even if Judge Shapiro's findings were not controlling, Mohns had not shown that the Trust's conduct was inequitable. I will disregard Judge Kelley's first reason because Judge Shapiro never decided during the prior adversary proceeding that the Trust had not engaged in inequitable conduct. See Loera v. United States, 714 F.3d 1025, 1031 (7th Cir. 2013) (a judge "has to have decided an issue for his resolution of it to be treated as law of the case").

10

Trust did not act as an arm's-length creditor in the position of the Trust would have acted. It is probably true that the transaction between John and the Trust involved self-dealing and that because of this self-dealing the Trust did not act like an arm's-length creditor. Still, it does not follow that <u>the Trust</u> engaged in inequitable conduct. It was the debtor who used his insider relationship with the Trust to gain an advantage for himself in the bankruptcy (the ability to claim the life insurance policies as exempt assets); the Trust did not use its insider relationship with the debtor to gain any advantage for itself. Indeed, because of the debtor's conduct, the Trust has been made worse off: it went from having an arguable security interest in the life insurance policies to having an unsecured claim. Thus, if anyone engaged in inequitable conduct with respect to the Trust's claim, it was the debtor. Yet equitable subordination is a remedy for inequitable conduct committed by a creditor, not a debtor. Here, the creditor did not engage in inequitable conduct, and therefore Mohns claim for equitable subordination must fail.

    Mohns points out that John intends to repay the Trust in full after the bankruptcy is over and argues that this means that the Trust's decision to release the collateral did give it an unfair advantage: the Trust will satisfy part of its claim using the assets of the estate, and then John will pay the Trust the rest of what it is owed outside of bankruptcy using the proceeds from the now-exempt life insurance policies. However, Mohns cites no authority in support of the proposition that a court may consider what might happen once the bankruptcy is over when deciding whether a claim should be equitably subordinated. Moreover, although John says that he intends to repay the Trust in full after the bankruptcy is over despite the fact that the Trust's claim has been discharged, we have no way of knowing whether he will actually do so. He might decide to keep the insurance policies for

11

himself. Thus, assuming that it is even proper to consider what might happen outside of bankruptcy, the Trust is still worse off: it went from having an arguable security interest in the policies to having an unsecured claim plus an unenforceable promise from the debtor that he will repay the Trust in full after the bankruptcy is over. So again, it is John's self-dealing that injured the Trust; the Trust did not engage in any self-dealing or obtain any benefit for itself at the expense of Mohns or the other unsecured creditors.

In sum, I will affirm the bankruptcy court's order granting summary judgment to the Trust on Mohns's claim for equitable subordination on the ground that the Trust's conduct was not inequitable.[4]

**B.     Amount of Trust's Claim**

The remaining question is whether the bankruptcy court erred in granting summary judgment to the trust on the issue of the amount of its claim. As noted, Judge Kelley determined that Judge Shapiro, in the prior adversary proceeding between Mohns and the debtors, had found that the amount of the Trust's claim was $102,800. Judge Kelley determined that this finding was binding on Mohns and could not be relitigated. However, in the order in which she made this determination, Judge Kelley did not identify the legal basis for her conclusion that the finding made by Judge Shapiro in the prior adversary proceeding was binding on Mohns. On appeal, the Trust does not identify any legal basis

---

[4]One question that might have been raised on appeal (but was not) is the standard of review that applies to a bankruptcy court's determination that certain conduct was or was not inequitable: is it de novo or abuse of discretion? I have been unable to find many appellate cases on this question. The only case I have found suggests that such a determination should be reviewed for abuse of discretion. See In re Black Ranches, Inc., 362 F.2d 19, 37 (8th Cir. 1966). However, even if the standard of review is de novo, I would reach the same result: the bankruptcy court correctly determined that the Trust's conduct was not inequitable.

12

for Judge Kelley's conclusion. See Appellee Br. at 16–17. Mohns contends that Judge Kelley applied the doctrine of issue preclusion (also known as collateral estoppel). See Opening Br. at 30. Another possibility is that she applied the doctrine of law of the case. I will consider whether her decision can be upheld under either of these doctrines.

First, it is clear that her decision cannot be upheld under the doctrine of issue preclusion. For issue preclusion to apply, the prior resolution of the issue must have been necessary to the validity of a final judgment. See, e.g., Loera v. United States, 714 F.3d 1025, 1028–29 (7th Cir. 2013); Pettitt v. Boeing Co., 606 F.3d 340, 344 n.5 (7th Cir. 2010); Jacobs v. Marathon County, 73 F.3d 164, 168 (7th Cir. 1996). In determining whether the debtors were entitled to a discharge, Judge Shapiro did not need to make findings concerning amount of the Trust's claim. Indeed, Judge Shapiro said exactly that in his order denying Mohns's post-hearing motions. See July 31, 2012 Dec. at 2 ("[T]he amount due to the trust had no affect [sic] upon this court's determination that both debtors are entitled to receive a discharge."). For the same reason, Judge Kelley's decision is not supported by the doctrine of law of the case. See 18B Charles Alan Wright et al., Federal Practice and Procedure § 4478 (2d ed. 2002) ("The actual-decision requirement means that dictum is not the law of the case, just as actual decision does not support issue preclusion unless decision was necessary to support the judgment." (Footnote omitted)). Accordingly, the bankruptcy court's grant of summary judgment to the Trust on this issue will be reversed, and the matter will be remanded to the bankruptcy court for further proceedings concerning the amount of the Trust's claim.

Mohns also contends that Judge Kelley erred in granting summary judgment to the Trust on the issue of the amount of its claim without allowing Mohns to take discovery.

13

Judge Kelley's refusal to allow discovery was based on her having given Judge Shapiro's prior finding regarding the amount of the Trust's claim preclusive effect. Because I have determined that Judge Shapiro's prior finding is not preclusive, Judge Kelley should, on remand, consider allowing Mohns to conduct discovery concerning the amount of the Trust's claim.

## III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the bankruptcy court's order granting summary judgment to the Trust on the issue of equitable subordination is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's order granting summary judgment to the Trust on the issue of the amount of its claim is **REVERSED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that each side shall bear its own costs on appeal.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 8th day of October 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge